UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSE LUIS FERRER-VALDEZ,

Petitioner,

v.

WARDEN, CALIFORNIA CITY IMMIGRATION PROCESSING CENTER,

Respondent.

No. 1:26-cv-06517-DAD-SCR (HC)

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS, DENYING PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER AS MOOT, AND DENYING MOTION TO EXPEDITE AS MOOT

(Doc. Nos. 1, 2)

On August 17, 2026, petitioner, proceeding *pro se*, filed a combined petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging his detention by Immigration and Customs Enforcement ("ICE") and a motion for temporary restraining order seeking his immediate release. (*Id.*) That same day, petitioner filed a motion to expedite consideration of his petition. (Doc. No. 2.) On August 19, 2026, the court issued an order setting a briefing schedule as to petitioner's motion for temporary restraining order and directed respondent to address whether any provision of law or fact in this case would distinguish it from the circumstances addressed in several cited prior cases that this court has decided. (Doc. No. 7.) Respondent was further directed to state any opposition that it had to the court's stated intention to rule on the

/////

underlying petition based on the current briefing before it as well as to provide substantive reasons in support of respondent's position in this regard in its opposition. (*Id.*)

On August 21, 2026, respondent filed an opposition to the pending petition for writ of habeas corpus. (Doc. No. 9.) Respondent argues therein that although this case is not substantively distinguishable from the case cited in the court's prior order, petitioner is an "applicant for admission" subject to mandatory detention pursuant to 8 U.S.C. § 1225(b), and that this case is within the category of cases where courts have typically ordered bond hearings because petitioner has a criminal history. (*Id.* at 1–2.) Respondent further requests the court to rule directly on the petition based upon the present briefing before it. (*Id.* at 2–3.)

Based upon the briefing before it, the court finds the following facts. On or about May 12, 2023, petitioner entered the United States where he was placed into removal proceedings and released into this country on parole pursuant to 8 U.S.C. § 1182(d)(5). (Doc. Nos. 1 at 21; 9 at 12.) On or about February 11, 2025, an immigration judge ("IJ") terminated petitioner's removal proceedings. (Doc. No. 9 at 12.) On or about April 10, 2026, petitioner was transferred from local custody to immigration custody, after the dropping of criminal charges upon which he had been arrested, where he has remained detained to date. (*Id.* at 12, 21.) That same day, the Department of Homeland Security issued a new Notice to Appear ("NTA") and re-initiated removal proceedings against petitioner. (*Id.* at 6.) There is no indication that petitioner's immigration arrest was pursuant to a warrant or that he was provided with an initial custody determination.

Petitioner argues that his detention violates due process. (Doc. No. 1 at 4.) As noted, respondent contends petitioner is subject to mandatory detention under § 1225(b). However, when respondents re-detained petitioner, he was not in active removal proceedings, and the NTA that was issued on April 10, 2026, charges petitioner as a noncitizen who is "present in the United States who has not been admitted or paroled." (*Id.*) Based upon these facts, the court concludes that petitioner is subject to discretionary detention pursuant to § 1226(a), not § 1225(b). *Lima Gamez v. Hernandez*, No. 2:26-cv-01104-BAT, 2026 WL 1382362, at *4–5 (W.D. Wash. May 18, 2026) (concluding that a petitioner was subject to § 1226(a) where he was previously released

from immigration custody, had removal proceedings dismissed against him, and subsequently re-detained and issued an NTA that stated he was "present in the United States without being admitted or paroled,"). The court is also unpersuaded by respondent's implicit suggestion that petitioner's due process rights are diminished because his prior removal proceedings were terminated. *Id.* at *5 ("The Court finds little sense in the proposition that, merely because the government dismissed removal proceedings against Petitioner and released him with no restrictions, he is less entitled to procedural protections than would be a petitioner who remains in active removal proceedings and is subject to conditional release."). Accordingly, the court concludes that petitioner's prior release from immigration custody imbued him with a liberty interest in remaining free from immigration custody. *Yu v. Hernandez*, No. 2:26-cv-01372-DGE, 2026 WL 1560581, at *6 (W.D. Wash. May 22, 2026) (concluding that a petitioner who was previously released from immigration custody and subsequently had removal proceedings dismissed retained a liberty interest in his continued release).

When an immigration detainee has a liberty interest in remaining free from custody, courts consider the three factors set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) to determine what process is required before stripping them of that interest. *Osorto v. Warden of Mesa Verde Det. Facility*, No. 1:26-cv-02915-DJC-JDP, 2026 WL 1224248, at *3 (E.D. Cal. May 5, 2026) ("Once a court has found that a noncitizen has a liberty interest in continued release, the court must next determine what procedural protections the government must afford the noncitizen before depriving him of that liberty interest. This requires balancing the factors laid out in *Mathews*[.]"), *report and recommendation adopted sub nom. Aguilar Osorto v. Warden of the Mesa Verde Det. Facility*, No. 1:26-cv-02915-DJC-JDP, 2026 WL 1330554 (E.D. Cal. May 13, 2026).

Under *Matthews*, courts consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

As to the first factor, petitioner has developed a significant private interest in remaining out of custody since immigration authorities initially released him on parole in 2023. *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1164 (S.D. Cal. 2025) ("First, Petitioner has a private interest in remaining free, which developed over the year he resided in the United States."). As to the second factor, the risk of erroneous deprivation is high here since there is no indication that petitioner has been provided a bond hearing or custody determination to assess the validity of petitioner's detention. "Thus, the probable value of additional procedural safeguards, i.e., a bond hearing, is high, because Respondents have provided virtually no procedural safeguards at all." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO (HC), 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, No. 1:25-cv-00107-KES-SKO (HC), 2025 WL 1808676 (E.D. Cal. July 1, 2025); *see also Osorto*, 2026 WL 1224248, at *3 ("Respondent offers no evidence or argument indicating that any procedural safeguards were employed prior to petitioner's re-detention; more generally, they give the court no reason to believe that any efforts were made to prevent erroneous deprivation of petitioner's liberty."). As to the third factor, "the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is 'low.'" *Salazar v. Casey*, No. 25-cv-02784 JLS-VET, 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025). Indeed, as other courts have noted, custody hearings "are routine and impose a 'minimal' cost.'" *Carballo v. Andrews*, No. 1:25-cv-00978-KES-EPG (HC), 2025 WL 2381464 (E.D. Cal. Aug. 15, 2025) (citation omitted). On balance, consideration of all the *Mathews* factors weigh in favor of petitioner. Accordingly, the court concludes that petitioner's detention violates due process.

With respect to respondent's statements regarding petitioner's criminal history, the court finds the reasoning of another judge of this district to be instructive:

> There is no evidence, nor has respondent presented any argument, suggesting that there was "the necessity of quick action" by ICE such that petitioner could not have been provided a pre-deprivation hearing after he was released by local authorities. *See Zinermon*, 494 U.S. at 128. Indeed, respondent does not argue that petitioner is a danger to the community or a flight risk. Moreover, there is no indication that a pre-deprivation hearing was unnecessary because petitioner was already in local law enforcement custody when he was re-detained; on the contrary, courts have found that a pre-deprivation

> hearing is still required where the petitioner is initially arrested by local law enforcement and then transferred to ICE custody. *See Adamchuk v. Casey*, No. 3:26-cv-1149-RBM-VET, 2026 WL 785532, at *1-2 (S.D. Cal. Mar. 20, 2026).
>
> Under these circumstances, I find that the "typical remedy" of release is appropriate because the government has not provided a lawful justification for re-detaining petitioner without a pre-deprivation hearing. *See Munaf*, 553 U.S. at 693. Petitioner's due process rights have been violated such that the appropriate relief is immediate release from custody, thereby returning him to the "*status quo ante*." *See Cardin Alvarez*, 2025 WL 2898389, at *21.

*Osorto*, 2026 WL 1224248, at *4–5. So too here, respondent has advanced no argument that petitioner presents a danger or a flight risk to the community. There is also no indication that respondent's would have been unable to provide petitioner with a pre-detention hearing before taking him back into custody. Accordingly, the court concludes that petitioner's detention violates due process and that the appropriate remedy here is to order his immediate release. *Yu*, 2026 WL 1560581, at *8 (ordering release of a petitioner who was re-detained after prior removal proceedings were dismissed).

For the reasons explained above,

1. Petitioner's combined petition for writ of habeas corpus and motion for temporary restraining order (Doc. No. 1) is GRANTED in part as follows:
    a. Petitioner's petition for writ of habeas corpus is GRANTED as follows:
        i. Respondent is ORDERED to immediately release petitioner Jose Luis Ferrer-Valdez, A-File No. 240-385-227, from respondent's custody;
        ii. Respondent is ENJOINED and RESTRAINED from re-detaining petitioner for any purpose, absent exigent circumstances, without notice and a hearing before an immigration judge at which hearing respondent will have the burden of establishing that petitioner is either a danger or flight risk by clear and convincing evidence;

/////

b. Petitioner's motion for temporary restraining order is DENIED as having been rendered moot by this order granting him habeas relief;

2. Petitioner's motion to expedite (Doc. No. 2) is DENIED as having been rendered moot by this order;

3. The Clerk of the Court is directed to serve the California City Immigration Processing Center with a copy of this order; and

4. The Clerk of the Court is also directed to enter judgment in favor of petitioner and close this case.

IT IS SO ORDERED.

Dated: **August 25, 2026**

Dale A. Drozd

DALE A. DROZD
UNITED STATES DISTRICT JUDGE